# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BILL LISLE, III and SMITH-LISLE HOLDINGS, LTD. | § § § | |
| v. | § § | Civil Action No. 4:15-CV-372 |
| CITY OF PLANO | § § § | Judge Mazzant |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant City of Plano's Motion for Summary Judgment (Dkt. #46). Having considered the relevant pleadings, the Court determines Defendant's Motion for Summary Judgment should be granted.

## BACKGROUND

Plaintiff Bill Lisle, III ("Lisle") is an individual and sole member and operator of Smith-Lisle Holdings, Ltd. ("SLH") (collectively, "Plaintiffs") (Dkt. #34 at ¶¶ 1, 6). Defendant City of Plano (the "City") is a municipal corporation of the State of Texas (Dkt. #34 at ¶ 2). SLH owns property at 813 18th Street, Plano, Texas (the "Property") that contained a main house, a metal garage, a carport, and a temporary building (Dkt. #34 at ¶ 6). The Property is located in an area designated by the City as a heritage district (Dkt. #34 at ¶ 7). A property owner within a heritage district must obtain a Certificate of Appropriateness ("CA") from the Heritage Commission (the "Commission") before commencing exterior modifications or new construction (Dkt #46 at ¶ 11). Plaintiff Lisle sought to improve the Property by constructing a rear addition to the already existing garage (Dkt. #46 at ¶ 15). Lisle began construction without obtaining a building permit from the City or a CA from the Heritage Commission (Dkt. #46 at ¶¶ 20–21).

The City's Heritage Preservation Officer, Bhavesh Mittal ("Mittal"), received information that construction was occurring on the Property (Dkt. #46 at ¶ 16). Mittal knew a CA had not been approved on the Property and submitted photos to Selso Mata ("Mata"), the City's Chief Building Official (Dkt. #46 at ¶ 17). Upon further investigation, Mata determined that no building permit had been issued for the garage construction (Dkt. #46 at ¶ 19). On August 29, 2013, the City's Building Inspections Department (the "Inspections Department") issued its first stop work order (the "First Order") that Plaintiffs did not appeal but allowed construction to continue (Dkt. #46 at ¶¶ 24, 32–33).

Soon after the issuance of the First Order, the City's Planning Department reached out to Lisle to schedule a meeting related to the Property (Dkt. #46 at ¶ 38). Lisle attended the meeting and learned what was required before the City would issue a building permit, which included filing a CA application (Dkt. #46 at ¶ 43). On October 25, 2013, Lisle filed a CA application for a new garage, and the Heritage Commission denied the application due to its lack of an updated site plan (Dkt. #46 at ¶¶ 52, 59). Lisle appealed the Commission's denial to the City Council, and the City Council denied the appeal (Dkt. #46 at ¶¶ 60, 100). Despite the First Order and lack of a CA, Plaintiffs completed construction of the new garage and began paving a driveway on the Property (Dkt. #34 at ¶¶ 15–16). The City learned of the continued construction and issued its second stop work order (the "Second Order") on or about January 17, 2014 (Dkt. #34 at ¶ 17). In response to the Second Order, Lisle went to the City's Inspections Department and met with Mata and other Inspections Department personnel (Dkt. #46 at ¶ 73). Lisle contended he was not required to obtain a permit to pour concrete for a driveway under the 2012 International Building Code (the "Building Code") Section 105.2(6) (Dkt. #46 at ¶ 74). Mata initially agreed with Lisle's contention (Dkt. #34 at ¶ 28). However, after conferring with Mittal, Mata told Lisle the

stop work orders applied to all work on the Property, and any construction had to cease (Dkt. #46 at ¶ 81). Mata then asserted if the stop work orders were violated, the City would issue a citation (Dkt. #46 at ¶ 82). After the meeting, Lisle continued to pave the driveway because he believed Mata lacked the authority to stop construction (Dkt. #46 at ¶¶ 82, 86). Mata instructed an inspector to issue Lisle a citation for failure to comply with a stop work order (Dkt. #46 at ¶¶ 88–89). Nevertheless, Lisle completed paving the driveway (Dkt. #46 at ¶ 95). The City of Plano Municipal court held a trial, and a jury found Lisle guilty of violating the Second Order (Dkt. #46 at ¶ 96). On his own motion, Lisle dismissed the appeal from his conviction (Dkt. #46 at ¶ 96).

On May 28, 2015, Plaintiffs filed suit against the City under 42 U.S.C. § 1983 (Dkt. #1). Plaintiffs assert the City, "through individuals acting in their official capacity, sought to deprive Plaintiffs [of] the use of their property and fined Mr. Lisle for using the property in a manner that was (and remains) lawful under Defendant's ordinances." (Dkt. #34 at ¶ 4). Plaintiffs also assert the City denied Plaintiffs due process rights and equal protection of the laws by disparate treatment of Plaintiffs when compared to others similarly situated (Dkt. #34 at ¶ 4).

On June 3, 2016, the City filed its motion for summary judgment (Dkt. #46). On August 2, 2016, Plaintiffs filed their initial response to the motion (Dkt. #51) and supplemented such response the next day (Dkt. #52). The City filed its reply on August 17, 2016 (Dkt. #63).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond*

*Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but must "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

(1) Whether *Monell* Liability Should Be Imposed Based on Mata's Actions Related to the Second Order

Plaintiffs' procedural and substantive due process claims against the City are claims against a municipality. Title 42 U.S.C. § 1983 creates a cause of action against a person who, acting under the color of state law, deprives another of a constitutionally or federally protected right, privilege, or immunity. Municipalities were not generally considered "persons" acting under the color of state law. However, in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held a municipal government could be liable under § 1983 when a municipal's official policy or custom causes a violation of a constitutional right. The Court noted that such liability could not rely on the theory of respondeat superior. *Id.* at 692.

A plaintiff must prove three elements to establish a municipal liability claim: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). An official policy can be shown in several ways. It can arise by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by governing body officers" or by a "persistent, widespread practice" that is "so common and well settled as to constitute a custom." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). A single discretionary action by a municipal official can constitute official policy under § 1983 if the municipal official had the authority to

promulgate final municipal policy regarding the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986).

Plaintiffs do not offer evidence of a written policy or custom that caused their constitutional harm. Instead, Plaintiffs rely on the alleged actions of Mata as a final policymaker in relation to the Second Order. Plaintiffs argue that Mata is a final policymaker due to the City's delegating broad authority to him to apply, interpret, and modify the Building Code (Dkt. #51 at p. 6). The City contends there is no evidence Mata is a final policymaker, because Mata's authority is limited by the City's ordinances and his actions are subject to review.

A court, rather than a jury, identifies whether a particular municipal individual has final policymaking authority by referencing state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). Texas law allows municipalities to approve and enact ordinances, rules, or regulations to carry out necessary functions. TEX. LOCAL GOV'T CODE ANN. § 51.001. Summary judgment evidence shows the City Council for the City of Plano is the policymaking body (Dkt. #46, Exhibit M, § 3.07). Section 3.07 of the City of Plano's Home Rule Charter states, "All powers of the city and the determination of all matters of policy shall be vested in the city council." *Id.* The City's City Council adopts the 2012 edition of the International Building Code as its ordinances and policies, found in Chapter 6 of the City's Code of Ordinances (Dkt. #46, Exhibit E, § 6-17; Dkt. #46, Exhibit D at p. 1).

The Building Code authorizes Mata as Chief Building Official to enforce and "render interpretations of [the] code and to adopt policies and procedures in order to clarify the application of its provisions" as well as "issue all necessary notices or orders to ensure compliance with [the] code." (Dkt. #46, Exhibit W, §§ 104.1, 104.3). The building official also possesses the authority to modify particular provisions of the Building Code if its application

6

becomes impractical (Dkt. #46, Exhibit H, § 104.10). While Mata has the necessary discretion to make initial decisions regarding stop work orders, this discretion is insufficient to confer policymaking status. The Supreme Court explained the authority to make municipal policy is the authority to make final policy:

> When an official's discretionary decisions are constrained by policies not of that official's makings, those policies, rather than the subordinate's departures for them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.

*Praprotnik*, 485 U.S. at 127; *see Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (quoting *Pembaur*, 475 U.S at 484 n. 12) (offering an example of the County Sheriff and Board of County Commissioners to distinguish between final policymakers and final decision makers); *see also Bennett v. City of Slidell*, 728 F.2d 726, 768–69 (5th Cir. 1984) ("[P]olicymaking authority is more than discretion, and it is far more than the final say-so . . . .").

The Court finds Mata is not a final policymaker to warrant a municipal liability claim against the City. Plaintiffs confuse the difference between a final policymaker and a decision maker. Mata's authority to make interpretations, policies, and procedures is limited and must "be in compliance with the intent and purpose" of the Code (Dkt. #46, Exhibit W, § 104.1). Further, the Building Code provides any order, decision, or determination made by Mata is subject to review by the City's Building Standards Commission (Dkt. #46, Exhibit G, § 6-3(c)(3); Dkt. #46, Exhibit I, § 113.1; Dkt. #46, Exhibit E, § 113). The City Council appoints the Building Standards Commission to review building official decisions to ensure compliance with the Code (Dkt. #46, Exhibit G, §§ 6-3(a)(1)). Thus, it is clear the Building Code is policy promulgated by the City Council, but nothing about Mata's authority, either under the Code or otherwise, shows he acts "in lieu of the [City Council] to set or modify city policy." *Bennett*,

728 F.2d at 769. Based on the foregoing, Plaintiffs' fail to create a fact issue regarding whether Mata is a final policymaker.

Therefore, the Court finds the City is not liable for Plaintiffs' constitutional claims.

(2) Whether Plaintiffs' Based on Mata's Actions Are Barred by the Favorable Termination Rule

Plaintiffs' due process and equal protection claims are premised on the actions of Mata when he issued the Second Order. The City asserts Plaintiffs' claims are barred by the favorable termination rule discussed in *Heck v. Humphrey*, 512 U.S. 477 (1994) (Dkt. #46 at p. 30). The City cites *ALRP Property, LLC v. Borough of Tarentum*, No. 11-134, 2011 WL 4955200 (W.D. Pa. Oct. 18, 2011), and argues *Heck* has been applied to due process claims similar to Plaintiffs' (Dkt. #63 at p. 10). In *ALRP*, the plaintiff was previously cited and found guilty for failure to remove an unsound building and for failure to rectify an unsafe structure. *Id.* at *4. ALRP alleged its due process rights had been violated when the Borough "improperly interfered with [ALRP's] rights to secure an occupancy permit and to use its property" and thereafter, improperly condemned [ALRP's] property." *Id.* at *7 (internal quotation marks and citation omitted). The *ALRP* court reasoned *Heck* barred plaintiff's due process claims:

> If ALRP would prevail in its argument that its due process rights were violated because the defendants' actions resulted in a wrongful denial of an occupancy permit and an incorrect condemnation, its convictions for failure to remove the building and for failure to rectify the notice of unsafe structure would be invalid.

*Id.*

Plaintiffs maintain *Heck* should not apply. They argue the application of *Heck* depends on whether a favorable finding in this § 1983 action "would require Plaintiffs to 'negate an element of the offense' for which Mr. Lisle was convicted." (Dkt. #51 at p. 18 (citing *Heck*, 512 U.S. at 487 n.6)). According to Plaintiffs', when Lisle was convicted of a misdemeanor for

8

violating the Second Order, "the City had to show only that Mr. Lisle 1) 'continue[d] to work, 2) after having been served with a stop work order.'" (Dkt. #51 at p. 18 (citation omitted)). Thus, Plaintiffs contend that since they dispute only the lawfulness of the Second Order, which is not an element of the offense, their claims "do not undermine or even imply that either of the jury findings" was invalid (Dkt. #51 at p. 18).

The City responds that *Heck* only requires a Section 1983 recovery to "impl[y] a state criminal conviction was invalid" rather than expressly disprove an element of the convicted offense (Dkt. # 63 at p. 10 (citing *Montgomery v. Bataille*, No. 4:10-cv-73, 2012 WL 3544867, at *5 (E.D. Tex. July 26, 2012), *report and recommendation adopted*, No. 4:10cv73, 2012 WL 2544746 (E.D. Tex. Aug. 16, 2012))).

The Court agrees with the City's interpretation of *Heck* and decides it applies. *Heck* bars § 1983 claims premised not only on unconstitutional convictions but also other harms "whose unlawfulness would render a conviction" invalid. *Heck*, 512 U.S at 486. As a result, when damages are sought in a civil rights suit, the relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction," unless the plaintiff demonstrates the prior conviction has already been invalidated or overturned. *Id.* at 487. In a footnote, the Supreme Court gave an example of "a § 1983 action that does not seek damages directly attributable to conviction . . . but whose successful prosecution of claim would necessarily imply" the wrongfulness of criminal conviction. *Id.* at 486 n. 6. Such a case would require the plaintiff "to negate an element of which he has been convicted to prevail." *Id.* Plaintiffs' argument relies on this footnote and several cases,[1] but it suffers from a misunderstanding of *Heck*. In this civil suit for damages, the only question is "whether a

---

[1] The cases that Plaintiffs' cite in support of their argument address Fourth Amendment claims. These cases are inapplicable because Plaintiffs' are asserting Fourteenth Amendment claims (Dkt. #34 at ¶¶ 3, 57, 60).

9

judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction." *Heck*, 512 U.S. at 487. Plaintiff Lisle was issued a citation and convicted for violating the Second Order. Lisle did not appeal or otherwise contest the validity of the municipal court conviction. Accordingly, Lisle cannot show his conviction "has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal authorized to make such a determination. *Heck*, 512 U.S. at 486. And if Lisle prevailed in this civil action, both on his due process and equal protection claims, it would "necessarily imply the invalidity" of his prior conviction because he was not provided due process or equal protection. Plaintiffs' alleged constitutional harms are not separate and distinct from his prior conviction and require the Court to prove a "fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

Therefore, Plaintiffs' due process and equal protection claims should be barred by *Heck*.

(3) Whether Plaintiffs' Claims Are Barred by Statute of Limitations and Discovery Responses

The City asserts two of Plaintiffs' causes of action alleged in their Second Amended Complaint are barred by the statute of limitations and precluded by discovery responses. Specifically, Plaintiffs' claims based upon (1) an allegation that the City's ordinance requiring pre-approval for pouring of pavement violates their substantive due process rights, and (2) an allegation that the City Council's denial of Plaintiffs' appeal of their garage CA application violates their substantive due process and equal protection rights (Dkt. #34 at ¶¶ 61, 63–66). The City argues Plaintiffs' alleged injuries occurred more than two years before Plaintiffs' first complaint (the "Original Complaint") (Dkt. #46 at p. 26). The City also argues Plaintiffs' interrogatories and deposition testimony fail to reference the constitutionality of the City's

ordinance or "identify any due process claim based upon the actions" of the City Council (Dkt. #46 at p. 27).

"Because there is no federal statute of limitations for § 1983 claims, district courts use the forum state's personal injury limitations period." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)). In Texas, the applicable limitations period is two years. *Id.* "Although the Texas limitations period applies, federal law governs when a § 1983 claim accrues, and '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* (citing *Gartrell*, 981 F.2d at 257).

Plaintiffs first respond their claims relating to the pre-approval ordinance are not barred because the Original Complaint stated the Second Order was baseless and questioned the legitimacy of the order (Dkt. #51 at p. 14; Dkt. #1 at ¶¶ 14, 16). Plaintiffs state these assertions relate back to the Original Complaint as allowed under Federal Rule of Civil Procedure 15(c). Rule 15(c) allows amendments to relate back to when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence" set out in the original complaint. FED. R. CIV. P. 15(c)(B). The Court agrees with Plaintiffs since the Original Complaint set out facts supporting the City's allegedly improper refusal to allow pouring of the driveway. Because the claims properly relate back, there is no need for the claims to be disclosed in a discovery response. Therefore, this claim is not barred by the statute of limitations or precluded by discovery responses.

Plaintiffs then argue the claims regarding their appeal of the garage CA application should not be barred because they relate back to the Original Complaint pursuant to Rule 15.

11

Plaintiffs' contend that while fewer facts related to the claim are pleaded in the Original Complaint, "the general fact pattern is present." (Dkt. #51 at p. 14).

Plaintiffs' Rule 15 argument is unpersuasive. The Original Complaint references only Plaintiffs' attempt to construct a driveway and never mentions Plaintiffs' previous attempt to get approval for construction of the garage. "[A] plaintiff's claim is ripe at the time the initial decisionmaker makes its final decision, and he need not exhaust his administrative remedies prior to asserting his claim." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985). Here, Plaintiffs' claim accrued on December 17, 2013, when the Heritage Commission denied their garage CA application (Dkt. #46 at ¶¶ 55, 59). Claims related to Plaintiffs' appeal of their garage CA application were not raised until Plaintiffs' First Amended Complaint on February 23, 2016, which exceeds the two year statute of limitations for personal injuries. Plaintiffs also point out the claims should not be barred because Lisle's citation for violating the Second Order was a result of the City Council failing to approve the project thirty days before the citation was issued (Dkt. #51 at p. 14). However, this contention fails because it is clear from Plaintiffs' Original Complaint that they maintain Lisle's citation was for construction of the driveway and not the garage (Dkt. #1 at ¶ 12–14).

Therefore, Plaintiffs' substantive due process and equal protection claims related to the City Council's denial of Plaintiffs' appeal should be barred by statute of limitations.

## CONCLUSION

Based on the foregoing, the Court finds Defendant City of Plano's Motion for Summary Judgment (Dkt. #46) is hereby **GRANTED**. It is further **ORDERED** that all of Plaintiffs' claims are hereby **DISMISSED** with prejudice.

**SIGNED this 28th day of September, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE